UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| **LOUISIANA FARM BUREAU MUTUAL INSURANCE COMPANY as the partial subrogee to the rights of/and BRENT WADE CRAWFORD AND LINDSEY CRAWFORD** | * | **CIVIL ACTION NO. 14-2700** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **LEVITON MANUFACTURING CO., INC.** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned magistrate judge on reference from the District Court is a motion to dismiss for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6) [doc. # 5], filed by defendant Leviton Manufacturing Co., Inc. ("Leviton"). The motion is opposed. For reasons assigned below, it is recommended that the motion to dismiss be GRANTED IN PART and DENIED IN PART.

## Background

On July 24, 2014, Brent Wade Crawford and Lindsey Crawford (collectively, the "Crawfords") and their homeowners' insurance carrier, Louisiana Farm Bureau Mutual Insurance Company ("LFB"), as partial subrogee to the rights of its insureds, filed the above-captioned petition for damages against Leviton in the 3rd Judicial District Court for the Parish of Lincoln, State of Louisiana. (Petition).[1] Plaintiffs allege that on October 15, 2013, the

---

[1] On September 11, 2014, Leviton removed the matter to federal court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. (Notice of Removal). In response to court order, Leviton filed an amended notice of removal that affirmatively alleged diversity jurisdiction. *See* doc. #s 17 & 18.

Crawfords' home located at 297 Pecan Lane, Dubach, Louisiana was damaged by a fire caused by a defect in a GFCI receptacle manufactured by Leviton. (Petition, ¶ 3). LFB paid $91,672.00 to the Crawfords for their fire-related loss, and thus, became subrogated to the Crawfords' rights against Leviton for that sum. *Id*., ¶ 4. For their part, the Crawfords had a $2,000 deductible under the policy. *Id*.

Plaintiffs contend that Leviton is liable for their damages because of its negligence and/or fault under the Louisiana Products Liability Act, La. R.S. 9:2800.51, *et seq*. ("LPLA"), in the following particulars,

- a. The design or manufacture of a product with inheritance [sic] defects which defendant knew or should have known would cause a fire;

- b. The sale of a product with inherent defects which defendant knew or should have known could cause a fire;

- c. Failing to issue a product recall of an inherently defective product;

- d. Manufacturing a product unreasonably dangerous in construction or composition;

- e. Manufacturing a product unreasonably dangerous in design;

- f. Any and all other acts of negligence which may become apparent during discovery or at the trial in this matter.

(Petition, ¶ 5).

On September 18, 2014, Leviton filed the instant motion to dismiss for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). In support of its motion, Leviton contends that, under Louisiana law, the LPLA is the exclusive source for recovery against a manufacturer for damage caused by its product(s). In addition, plaintiffs' bare and conclusory allegations fail to state a claim for relief under the LPLA.

In response to defendant's motion, plaintiffs filed an amended complaint on October 7,

2014, detailing that,

> 3a.
> The fire began in a GFCI receptacle manufactured by Leviton which was located in an exterior wall of the Crawford home. The receptacle manufacture [sic] by defendant was severely damaged by the fire and cannot be identified by model number, but contains the markings "spec grade" and "nom 057".
>
> 3b.
> The receptacle was installed new at the time of the home's construction approximately eight to nine years prior to the fire, and no modifications or changes had been made to the product since the date of manufacture.
>
> 3c.
> The fire that damaged the Crawford home began in the receptacle and under the principle of *res ipsa loquitor,* plaintiffs are entitled to an evidentiary presumption of a defect in the product as there are [sic] no other reasonable hypothesis for the causation of the fire.
>
> 3d.
> As shown by the correspondence, attached hereto and marked for identification as **Exhibit A**, Leviton was put on notice that a fire had occurred and was caused by its product on November 4, 2013. Defendant was also provided the opportunity to examine the product and failed to do so.

Amend. Compl. [doc. # 10].

Plaintiffs filed their opposition to the motion to dismiss on October 9, 2014. Leviton filed its reply on October 17, 2014. Thus, the matter is ripe.

### **12(b)(6) Standard**

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." Fed.R.Civ.P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *See Iqbal, supra*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra* (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly,*

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. Moreover, courts are compelled to dismiss claims grounded upon invalid legal theories even though they might otherwise be well-pleaded. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Nevertheless, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. Appx. 710, 713 (5th Cir. Oct. 10, 2008) (unpubl.) (citations and internal quotation marks omitted). Further, "a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally

requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [her] legal argument." *Skinner v. Switzer*, ___ U. S. ___, 131 S. Ct. 1289, 1296 (2011).[2]

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" – including public records. *Dorsey, supra*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n9 (5th Cir. 2007) (citation omitted) (proper to take judicial notice of matters of public record). Furthermore, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000) (citations and internal quotation marks omitted).

## Law and Analysis

**I.    Louisiana Law Applies to Substantive Issues**

Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427, 116 S.Ct. 2211(1996); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817 (1938). The parties in this matter implicitly agree that the disputed issues are governed by the substantive law of Louisiana.[3] *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 206 (5th Cir. 2007) (deferring to the parties' agreement that Louisiana substantive law controlled); *Ace American*

---

[2] "Courts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted).

[3] Both sides analyzed plaintiffs' claims pursuant to Louisiana law.

*Insurance Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832 (5th Cir. 2012) (applied Texas law where neither side disputed that Texas law applied); *Jefferson v. Lead Indus. Ass'n*, 106 F.3d 1245, 1250 (5th Cir. La. 1997) (applied Louisiana law where no party disputed that Louisiana law governed).

Because Louisiana law applies, "courts must begin every legal analysis by examining primary sources of law: the State's Constitution, codes, and statutes. Jurisprudence, even when it rises to the level of *jurisprudence constante,* is a secondary law source in Louisiana." *Ayala v. Enerco Grp., Inc.*, 569 F. App'x 241, 246 (5th Cir. 2014) (citation omitted). Thus, this court must look first to the LPLA, and only secondarily to judicial decisions (i.e., decisions of the Louisiana Supreme Court). *Id.*, *see also Moore v. State Farm Fire & Casualty Co.*, 556 F.3d 264, 269 (5th Cir. 2009) (citation omitted).

## II. LPLA Exclusivity

Under Louisiana law, the LPLA provides "the exclusive theories of liability for manufacturers for damage caused by their products. **A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in [the LPLA].**" La. R. S. 9:2800.52 (emphasis added); *see also Jefferson*, 106 F.3d at 1251.

Plaintiffs concede that, to the extent their complaint may be read to assert potential theories of recovery beyond the LPLA, the claims are precluded, and not viable. (Pl. Opp. Memo., pg. 3). The court agrees, and so holds.

## III. Sufficiency of the LPLA Allegations

To hold a manufacturer liable under the LPLA, a plaintiff must establish: "damage

6

proximately caused by a characteristic of the product that rendered its product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity." La. R. S. 9:2800.54 A. Liability may attach, if and only if (among other requirements) the product is unreasonably dangerous: 1) in construction or composition, 2) design, 3) because of an inadequate warning, or 4) because it fails to conform to an express warranty. La. R. S. 9:2800.54 B. Ultimately, a cause of action under the LPLA requires proof:

1. that the defendant is a manufacturer of the product;

2. that the claimant's damage was proximately caused by a characteristic of the product;

3. that the characteristic made the product unreasonably dangerous in one of the four ways provided in the statute; and

4. that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.

*Jefferson*, 106 F.3d at 1251.

In this case, plaintiffs contend that the receptacle was unreasonably dangerous only in two of the four categories of defects recognized by the LPLA: construction/composition and design. (Petition, ¶ 5). The court will analyze the sufficiency of plaintiffs' allegations under each category.

    a) <u>Construction or Composition</u>

According to the LPLA, "[a] product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." La. R.S. §

9:2800.55.  Thus, "[t]o prevail under the construction or composition theory, Louisiana courts require the plaintiff to (i) set forth the manufacturer's specifications for the product and (ii) demonstrate how the product materially deviated from those standards so as to render it unreasonably dangerous."  *Roman v. W. Mfg., Inc.*, 691 F.3d 686, 698 (5th Cir. 2012) (citations and internal quotation marks omitted).  A material deviation is one that increases the propensity for injury.  *Id*.

Here, plaintiffs do not allege facts to support either of the requirements for a defective construction/composition claim.  Instead, they invoke the *res ipsa loquitur* doctrine, which the Louisiana Supreme Court has defined as,

> a rule of circumstantial evidence that infers negligence on the part of defendants because the facts of the case indicate that the negligence of the defendant is the probable cause of the accident, in the absence of other equally probable explanations offered by credible witnesses. The doctrine allows an inference of negligence to arise from the common experience of the factfinder that such accidents normally do not occur in the absence of negligence.
>
> Additionally, the doctrine does not dispense with the rule that negligence must be proved. It simply gives the plaintiff the right to place on the scales, "along with proof of the accident and enough of the attending circumstances to invoke the rule, an inference of negligence" sufficient to shift the burden of proof.
>
> The doctrine applies only when the facts of the controversy "suggest negligence of the defendant, rather than some other factor, as the most plausible explanation of the accident. Application of the principle is defeated if an inference that the accident was due to a cause other than defendant's negligence could be drawn as reasonably as one that it was due to his negligence." The doctrine does not apply if direct evidence sufficiently explains the injury.

*Lawson v. Mitsubishi Motor Sales of Am., Inc.*, 938 So. 2d 35, 44 (La. 9/6/06) (citing *Cangelosi v. Our Lady of the Lake Regional Medical Center,* 564 So.2d 654 (La.1989)).

Generally, *res ipsa* presupposes three requirements:

> 1) the circumstances surrounding the accident are so unusual that, in the absence of other pertinent evidence, there is an inference of negligence on the part of the defendant; 2) the defendant had exclusive control over the thing causing the

>  injury; and 3) the circumstances are such that the only reasonable and fair
>  conclusion is that the accident was due to a breach of duty on defendant's part.

*Spott v. Otis Elevator Co.*, 601 So. 2d 1355, 1362 (La. 1992) (citations omitted)..

The second requirement, however, is not strictly enforced. *Id*. Thus, *res ipsa* "is satisfied if the circumstances indicate that it is more probable than not that the defendant caused the accident and other plausible explanations do not appear to be the probable cause of the accident." *Spott, supra*. In other words, plaintiffs need to sufficiently exclude inference of their own responsibility or the responsibility of others besides defendant in causing the accident. *Lawson, supra*. Finally, *res ipsa* is available in the products liability context. *Lawson*, 938 So. 2d at 49.

As recited above, plaintiffs allege that the fire started in a GFCI receptacle manufactured by defendant, and that no modifications or changes were made to the product since the date of manufacture. (Amend. Compl., ¶¶ 3a-c). As an initial matter, the court notes that, at least in its experience, GFCI receptacles do not ordinarily combust spontaneously. Thus, the accident is unusual.

Nonetheless, Leviton maintains that plaintiffs have not excluded other reasonable causes of the fire such as, improper use of the receptacle by the plaintiffs, improper installation of the receptacle by a third party, and/or post-installation faulty electrical work at the residence.[4] However, plaintiffs *did* allege that no post-installation modifications or changes were made to the receptacle. Moreover, given that the receptacle at issue was a GFCI, i.e., "Ground Fault Circuit Interrupter" (as opposed to a non-GFCI receptacle), it is reasonable to infer, at least at

---

[4] Leviton alleges that there is evidence that electrical work was performed at plaintiffs' home on the day that the fire occurred. (Def. Reply Memo., pg. 6 n.9). As Leviton acknowledged, however, the court cannot consider outside evidence in the 12(b)(6) context. *Id*. Also, plaintiffs alleged that the fire started in the receptacle and that no changes or modifications were made to the device – allegations that the court must credit for purposes of this motion.

this stage of the proceedings, that any overloading of the circuit by the plaintiffs should have triggered the breaker in the receptacle -- rather than causing a fire.[5] Furthermore, the fact that the receptacle apparently worked, without incident, for eight to nine years after installation undermines the possibility that it was installed improperly.[6]

In sum, the court finds that plaintiffs' allegations suffice to invoke *res ipsa* as a means to state a plausible defective construction or composition claim against defendant under the LPLA.

b) <u>Design</u>

Under the LPLA:

> [a] product is unreasonably dangerous in design if, at the time the product left its manufacturer's control:
>
> (1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and
>
> (2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.

La. R.S. § 9:2800.56.

Thus, to state a claim for defective design under the LPLA, plaintiff must allege, at minimum, an

---

[5] "The ground-fault circuit interrupter, or GFCI, is a fast-acting circuit breaker designed to shut off electric power in the event of a ground-fault within as little as 1/40 of a second." https://www.osha.gov/SLTC/etools/construction/electrical_incidents/gfci.html (last visited on 12/9/2014). Courts may take judicial notice of government websites. *Rhines v. Salinas Const. Technologies, Ltd.*, Civ. Action No. 11-0262, 2011 WL 4688706, at *2 n.2 (S.D. Tex. Oct. 3, 2011) (citing *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir.2005)).

[6] Albeit, this consideration also tends to undermine, but not necessarily preclude, a manufacturing defect. On the other hand, the defect could have been latent.

alternative design that was capable of preventing the damage. *See Flagg v. Elliot*, Civ. Action No. 14-0852, 2014 WL 4450451, at *4 (E.D. La. Sept. 10, 2014); *Becnel v. Mercedes-Benz USA, LLC*, Civil Action No. 14-0003, 2014 WL 1918468, at *8 (E.D. La. May 13, 2014).

Here, although plaintiffs unequivocally fail to allege an alternative design, they *do* allege that they possess the subject receptacle and that they have retained experts to evaluate the cause of the loss. *See* Nov. 4, 2013, Letter from Pl. to Def.; Amend. Compl., Exh. A. (Amend. Compl., Exh. A). In addition, despite opportunity to do so, defendant has not participated in a joint inspection of the receptacle. (Amend. Compl., ¶ 3d).

Considering same, and because plaintiffs *have* alleged a plausible claim for defective construction or composition, "judicial experience" and "common sense"[7] counsel against dismissal of the design defect claim at the pleading stage. Indeed, inspection of the receptacle should provide the necessary information for plaintiffs' experts to discern whether an alternative design could have prevented the fire.

Accordingly, the court concludes that plaintiffs' complaint, as amended, states a plausible defective design claim under the LPLA, sufficient to afford defendant fair notice of the claim(s) against it, along with the reasonable *expectation* that discovery will reveal relevant evidence for each of the elements of the claim. *Twombly, supra*.

## Conclusion

For the foregoing reasons,

IT IS RECOMMENDED that the motion to dismiss for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6) [doc. # 5], filed by defendant Leviton

---

[7] *See Iqbal, supra*.

Manufacturing Co., Inc. be GRANTED IN PART, DISMISSING WITH PREJUDICE, any, and all of plaintiffs' *non-LPLA* claims only.

IT IS FURTHER RECOMMENDED that defendant's motion [doc. # 5] otherwise be DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 10th day of December 2014.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE